UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) ) | Civil No. 17-CV-01361-RCL |
| v. | ) ) ) | |
| TODD T. SEMONITE, *Lieutenant General, U.S Army Corps of Engineers* and ROBERT M. SPEER, *Acting Secretary of the Army* | ) ) ) ) ) ) | |
| Defendants, | ) ) ) | |
| VIRGINIA ELECTRIC AND POWER COMPANY, | ) ) ) | |
| Defendant-Intervenor. | ) ) | |
| NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES and ASSOCIATION FOR THE PRESERVATION OF THE VIRGINIA ANTIQUITIES | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil No. 17-CV-01574-RCL |
| v. | ) ) | |
| TODD T. SEMONITE, *Lieutenant General, U.S Army Corps of Engineers* and ROBERT M. SPEER, *Acting Secretary of the Army* | ) ) ) ) ) | |
| Defendants, | ) ) ) | |
| VIRGINIA ELECTRIC AND POWER COMPANY, | ) ) ) ) | |
| Defendant-Intervenor. | ) ) | |

1

# MEMORANDUM OPINION

Before the Court are plaintiff National Parks Conservation Association's Motion for Preliminary Injunction (17-cv-01361, ECF No. 5); plaintiffs National Trust for Historic Preservation in the United States' and Association for the Preservation of Virginia Antiquities' Motion for Preliminary Injunction (17-cv-01574, ECF No. 22) (collectively, "Motions for Preliminary Injunction"); and all responses and replies thereto. Given the substantially similar nature of the cases, the Court will address both motions in this opinion. For the reasons given below, the Court will **DENY** the Motions for Preliminary Injunction.

## I. BACKGROUND

This dispute arises out of a planned electrical infrastructure project, known as the Surry-Skiffes Creek-Whealton Project ("Project"), which defendants contend is necessary to provide reliable electric service to the region. The Project consists of three components: (1) a new overhead transmission line across the James River from Surry to Skiffes Creek, (2) a new electrical switching station at Skiffes Creek, and (3) a new overhead transmission line from Skiffes Creek to Whealton. The river-crossing component of the Project will cross the James River through and in close proximity to numerous historically significant sites dating back to the birth of our Nation: the Captain John Smith Trail, the Jamestown-Hog Island-Captain John Smith Trail Historic District, Jamestown Island, the Colonial Parkway, Colonial National Historical Park, and Carter's Grove National Historic Landmark. The river crossing will entail the construction of seventeen towers, up to 295 feet tall, across the James River.

In early 2013, defendant-intervenor Virginia Electric and Power Company ("Dominion") sought approval for the Project from the U.S. Army Corps of Engineers ("Corps"). In August 2013, the Corps issued a public notice initiating the Project permitting process, solicited comments

from the public and government agencies, and noted that a preliminary review indicated that an Environmental Impact Survey ("EIS")—required under the National Environmental Policy Act ("NEPA") for projects that significantly impact the environment—would not be required. In response to the notice, the Corps received comments expressing concern with the Project's proximity to historic sites—including from the National Parks Service ("NPS"), a sister government agency. From 2014-2017, the Corps engaged in the consultation process required under Section 106 of the National Historic Preservation Act ("NHPA") and continued to receive expressions of concern regarding the impact of the Project and the need for an EIS from various stakeholders, including from NPS and the White House Council on Environmental Quality ("CEQ").

In May 2017, the Corps; Dominion; and the Acting Assistant Secretary of Interior for Fish, Wildlife, and Parks (on behalf of NPS), among other parties, signed a Memorandum of Agreement ("MOA"). The MOA, developed through the Section 106 consultation process, contained stipulations to avoid, minimize, and mitigate adverse impacts to the historical sites in proximity to the proposed Project. In June 2017, the Corps signed and released a document entitled Memorandum for the Record ("MFR"). The MFR, a 111-page document, includes an Environmental Assessment ("EA") and a Finding of No Significant Impact ("FONSI") as required under NEPA, and a Section 404 Statement of Findings as required under the Clean Water Act ("CWA"). And on July 3, 2017, the Corps issued the permit to Dominion authorizing the portions of the Project under Corps jurisdiction, subject to compliance with the MOA (among other conditions).

Plaintiffs, all non-profit organizations, subsequently brought suit in this Court and moved for preliminary injunctions. Plaintiffs National Trust for Historic Preservation in the United States

3

and Association for the Preservation of Virginia Antiquities allege violations of NEPA, the NHPA, the CWA, and the Rivers and Harbors Act ("RHA") and request that the court enjoin only the river crossing component of the Project. Plaintiff National Parks Conservation Association alleges violations of NEPA and the NHPA and moves that the court enjoin implementation of the Corps' permit to Dominion. On September 20, 2017, the Court heard oral arguments on the Motions for Preliminary Injunction. The Court now considers these motions.

## II. LEGAL STANDARD

In order to obtain a preliminary injunction, plaintiffs must satisfy the following four elements: (1) likelihood of success on the merits; (2) likelihood that they will suffer irreparable harm in the absence of the preliminary injunction; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Preliminary injunctive relief is an extraordinary form of judicial relief and is "never awarded as of right," but only "upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22, 24; *Sherley v. Sebelius*, 644 F. 3d 388, 392 (D.C. Cir. 2011). Plaintiffs must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. The Court of Appeals "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. Engalnd*, 454 F.3d 290, 297 (D.C. Cir. 2006). The injury "must be both certain and great; it must be actual and not theoretical." *Id.* (*citing Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C.Cir.1985) (per curiam)). Plaintiffs must demonstrate that the injury is "of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (internal quotations removed). Moreover, the injury "must be beyond remediation" and "[m]ere injuries,

4

however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough." *Id.* (internal quotations removed).

Prior to the Supreme Court's ruling in *Winter*, a number of circuits, including the D.C. Circuit, evaluated the four factors using a "sliding scale" approach—allowing a strong showing on one of the factors to make up for a weaker showing on another factor. *Sherley*, 644 F. 3d at 392. The D.C. Circuit has yet to clarify whether *Winter* explicitly precludes the use of a "sliding scale" approach. *Id.* at 393. But, the outcome of this case would not change even if analyzed under a "sliding scale" approach. The Court finds that the plaintiffs have not established a likelihood of any irreparable harm and "failure to show any irreparable harm is [] grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy* 454 F.3d. at 297. The Court, therefore, need not consider the other three factors of the preliminary injunction test, even though the plaintiffs have made a powerful argument on the merits. *GEO Specialty Chem., Inc. v. Husisian*, 923 F.Supp.2d 143, 147 (D.D.C. 2013).

### III. DISCUSSION

Plaintiffs put forward a number of arguments alleging they will suffer irreparable harm in the absence of a preliminary injunction. First off, both sets of plaintiffs point to harm to their recreational and aesthetic interests should Dominion construct the electrical towers across the River. *See* 17-cv-01361, ECF No. 5-1 at 42-43; 17-cv-01574, ECF No. 22-1 at 33. At the heart of their allegations is the claim that the electrical line and the seventeen towers across the river will negatively affect viewsheds in the area and irreparably harm their overall enjoyment of the nationally important region. For example, a declarant for plaintiff National Parks Conservation Association explains that "[t]he intrusion of mammoth towers of modernity will instantly and forever after alter the space, the peace, and the reflection of this place in history" and that her

experience "will forever be diminished" and "permanently tarnished by this intrusion on an unparalleled landscape." 17-cv-01361, ECF No. 5-1 at 42-43. Plaintiffs National Trust for Historic Preservation in the United States and Association for the Preservation of Virginia Antiquities note that their "members currently use this area for recreational and aesthetic purposes" and those "uses would be compromised by the River Crossing." 17-cv-01574, ECF No. 22-1 at 33.

The Court is not persuaded that those alleged injuries are irreparable at this stage of the litigation. The alleged injuries are not "of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Chaplaincy* 454 F.3d. at 297. Dominion has indicated that it does not plan to begin construction on the tower structures across the river until at least April 2018. 17-cv-01361, ECF No. 22 at 38. The first stage of the Project—scheduled to commence this month—involves constructing the underwater foundations which will extend seven feet above the water. *Id.* Therefore, the source of the plaintiff's alleged irreparable harm— "mammoth towers"—won't begin to be built for at least another six months, leaving the parties' ample time to fully brief the merits of the case. The standard is not that irreparable harm will occur at some point in the future, but that plaintiffs suffer irreparable harm before a decision on the merits can be reached.[1] As our Court has noted, "it is well established that 'perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm *before a decision on the merits can be rendered.*'" *Sierra Club v. United States Army Corps of Engineers*, 990 F. Supp. 2d 9, 38 (D.D.C.

---

[1] The Court need not find at this time whether the fully constructed electrical line and towers constitute irreparable harm. If this case has not been decided on the merits prior to beginning of construction on the towers, the Court welcomes renewed motions for preliminary injunction at that time.

6

2013) (*citing* 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (2d ed. 2013) (emphasis added)).

Here, Plaintiffs have not demonstrated that the seventeen foundations will result in irreparable harm to their interests. The foundations, spread across an approximately four-mile stretch of the river, will extend a mere seven feet above the river—roughly the height of a person standing on a boat. *See* 17-cv-01361, ECF No. 22 at 38. The Court is hard pressed to see, nor have plaintiffs established, how that will result in the "great" harm necessary to warrant a preliminary injunction. *Chaplaincy*, 454 F.3d. at 297. It is not clear whether they will even be visible from a number of the historical sites in the region (for example, Carter's Grove, one of the closest land-based vantage points, sits roughly 1.5 miles from the site of the river crossing). And even if visible from land-based vantage points or individuals travelling by boat, they would not irreparably harm plaintiffs' recreational and aesthetic interests any more than the various ferries and ships already traversing the river.

Plaintiffs National Trust for Historic Preservation in the United States and Association for the Preservation of Virginia Antiquities stress that "they will begin to suffer harm when Dominion initiates construction." 17-cv-01574, ECF No. 22-1 at 33. One declarant notes, "[i]f construction begins this fall, my experience would be permanently and irreparably harmed by viewing construction equipment and massive industrial barges in the river, and I would likely end my jogs along the Island loop due to such construction." 17-cv-01574, ECF No. 22-5 at ¶6. Plaintiffs further contend that construction activities will "cause Plaintiffs' members, and the educational groups they host, to delay, cancel, or lessen enjoyment of planned visits to the area." 17-cv-01574, ECF No. 22-1 at 34.

The Court finds that this argument also falls short in establishing irreparable harm. First off, for an injury to qualify as irreparable it much be "beyond remediation." *Chaplaincy*, 454 F.3d at 297. Construction, by its very nature, is temporary. The Court can issue an injunction at a later stage and order construction to be halted.[2] At that time, any individuals who were deterred from visiting the area could return without having to witness an active construction project. Plaintiffs have not provided evidence, outside of conclusory declarations, that individuals who visit the area during construction will choose not to return in the future specifically because of their negative experience.

Next, Plaintiffs allege that they will sustain irreparable procedural harm should the Court fail to grant a preliminary injunction. Procedural harm arising from a NEPA violation coupled with "irreparable aesthetic injuries" can constitute irreparable harm. *Fund For Animals v. Norton*, 281 F. Supp. 2d 209, 222 (D.D.C. 2003) (*citing Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, (1987)). However, as noted above, the plaintiffs have not established *irreparable* aesthetic injuries. And even if the Court were to assume a NEPA violation, that procedural harm standing alone is insufficient to constitute irreparable harm. *Id*.

Plaintiffs also contend, relying on out-of-circuit cases, that failing to issue an injunction and allowing Dominion to push forward with the Project will render any future EIS to be of "little, if any, utility." 17-cv-01361, ECF No. 34 at 23. The government decision makers will already have their minds made up and reasonable alternatives will necessarily be limited as Dominion begins construction of the towers in the river. Plaintiffs cite the First Circuit case *Sierra Club v.*

---

[2] Defendants argue that the harm would also not be irreparable because the Court could always order the completed towers removed at a later point. Defendants do not provide the basis by which the Court could promulgate such an order. Nor is the Court aware of any precedent to order a private company to tear down a completed project. *See Finca Santa Elena, Inc. v. U.S. Army Corps of Engineers*, 62 F. Supp. 3d 1, 5 ("The Court is aware of no case, and plaintiffs cite none, where a court in a NEPA case ordered a defendant to dismantle a completed construction project."). Therefore, the Court does not base its decision today on the ability to reverse any future harm that may occur from the completed towers in the river.

8

*Marsh*, among other cases, highlighting that "the harm at stake is ...the added risk to the environment that takes place when government decisionmakers make up their minds without having before them a [proper] analysis." *Sierra Club v. Marsh*, 872 F. 2d 497, 500 (1st Cir. 1989).

The Court is not persuaded by this argument. The Supreme Court and D.C. Circuit require that irreparable harm be likely, not merely speculative. *Winter*, 555 U.S. at 22; *Chaplaincy*, 454 F.3d at 297. The Court finds it hard to believe that the Corps, which has no financial stake in this Project and is merely the permitting organization, would be unable to objectively weigh reasonable alternatives in a future EIS just because Dominion has started construction. Plaintiffs have not presented evidence sufficient to show that scenario is *likely*. Moreover, if the Court ultimately determines that the EIS is required, it can direct the Corps to ignore the fact that Dominion has already begun the Project in considering the reasonable alternatives. In short, the plaintiffs' contention that they will suffer irreparable procedural harm fails.

Finally, plaintiffs National Trust for Historic Preservation in the United States and Association for the Preservation of Virginia Antiquities contend they will suffer irreparable harm to their organizational missions. *See* 17-cv-01574, ECF No. 22-1 at 34-36. They note that their organizations are focused on protecting and promoting historical sites and that the construction of the Project conflicts with those purposes. *Id.* They cite declarations highlighting that the construction will make it more difficult to attract visitors to ongoing activities and other events at Historic Jamestowne and Colonial National Historical Park as well as jeopardize their efforts to have Jamestown Island formally designated as a UNESCO World Heritage Site. *Id.* at 35-36.

It is not adequate for the plaintiffs to allege mere harm to the organization; the harm must also be irreparable to warrant a preliminary injunction. *See League of Women Voters of United States v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) (finding that organization's mission was harmed

because "after the registration deadlines for the November election pass, there can be no do over and no redress") (internal quotations removed). As the Court has already described, a construction project can be ordered to stop, which undercuts the notion that the injury is irreversible.

But even if the Court was to accept that the harm would be irreversible if visitors decided not to visit the site as a result of the construction and the plaintiffs' fund raising efforts were thwarted, the plaintiffs' argument still falls short. Specifically the plaintiffs cite declarations contending that visitors, upon seeing the construction barges, will choose not to return to the site. See 17-cv-01574, ECF No. 22-8 at ¶5; 17-cv-01574, ECF No. 22-4 at ¶7. One declarant goes further and notes that some visitors "may also share their disappointment in the experience with friends and on social media platforms" thereby "damaging the reputation of the once well-preserved cultural landscapes" and impeding the organization's ability to satisfy their "educational mission" and fundraising goals. 17-cv-01574, ECF No. 22-8 at ¶3.

Defendants point out, though, that the James River has substantial ship and barge traffic and the Corps itself already uses barges in the same location as the proposed river crossing project. 17-cv-01574, ECF No. 29 at 35-36. The Court finds that the plaintiffs' claims about how visitors will react to that specific construction site are speculative at best. Perhaps visitors won't notice the construction, and if they do perhaps it will not deter them from future visits. Plaintiffs bear the burden of establishing that the irreparable injury must be likely, not merely speculative. *Winter*, 555 U.S. at 22; *Chaplaincy*, 454 F.3d at 297. And the Court finds that the plaintiffs have failed to establish their high burden in this case.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, the Court finds that the plaintiffs have failed to establish a likelihood of irreparable harm prior to this case being decided on the merits. Therefore, the

plaintiffs Motions for Preliminary Injunction (17-cv-01361, ECF No. 5 and 17-cv-01574, ECF No. 22) will be **DENIED**. A separate Order consistent with this Memorandum Opinion shall issue this date.

SIGNED this \_\_\_\_20th\_\_\_\_ day of October, 2017.

                                               HONORABLE ROYCE LAMBERTH
                                               UNITED STATES DISTRICT JUDGE