# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| TODD T. SEMONITE, *et al.*, | ) ) )   Civil Action No. 1:17-cv-01361-RCL |
| Defendants, | ) ) ) |
| and | ) ) ) |
| VIRGINIA ELECTRIC & POWER COMPANY, | ) ) ) |
| Defendant-Intervenor. | ) ) |

## VIRGINIA ELECTRIC AND POWER COMPANY'S OPPOSITION TO NATIONAL PARKS CONSERVATION ASSOCIATION'S RULE 59(e) MOTION FOR RECONSIDERATION

### Introduction

Reconsideration is not warranted here. First, the Court did not make any mistake of fact or law in its decision to remand the matter to the U.S. Army Corps of Engineers ("Corps") without vacating the Corps permit at issue in this case. Rather, National Parks Conservation Association ("NPCA") has now decided to change its position—only *after* the Court ruled against it—in a last-ditch attempt to obtain a different result. The Court did not misinterpret NPCA's statements about whether it would urge removal of the transmission line's towers if the Court ordered vacatur. NPCA's briefs, argument, and answer to this Court's specific question *all* confirm that NPCA refused to abandon its publicly stated goal of having the towers removed before completion of the Environmental Impact Statement ("EIS"). As Maya Angelou astutely

advised: "When someone shows you who they are, believe them the first time." A motion for reconsideration is not a proper vehicle to reverse a party's long-held and espoused position.

Second, even if the Court accepts NPCA's changed position (and NPCA does not have another change of heart), the threat to electric reliability in North Hampton Roads will not vanish. The Court's remand order was not based just on the likelihood that NPCA would initiate proceedings after vacatur to seek removal, but also on the Court's acceptance of NPCA's own contention that the Corps would be required to consider enforcement action if the permit is vacated. ECF 147 at 13-14 ("Furthermore, even if plaintiffs did not initiate proceedings to have the towers removed following a vacatur order, defendants would be in violation of the law by continuing to operate the project without the permit…. At the very moment that the Court would order vacatur, the project would be in direct violation of the law requiring a permit."). Moreover, third parties could initiate proceedings seeking removal of the towers. Notwithstanding NPCA's purported change in position, remand without vacatur remains necessary to protect electric reliability in North Hampton Roads from all these threats while the Corps conducts the EIS process.

Finally, it is not necessary to vacate the permit to protect the purpose and integrity of the EIS process. This Court has already rejected NPCA's argument that, absent vacatur, the Corps will be unable or unwilling to conduct a lawful EIS. A motion for reconsideration is not a proper vehicle to re-argue legal issues on grounds that the Court has already rejected. In any event, NPCA still offers nothing to substantiate its allegation or to expect the Corps would conduct the EIS any differently if the permit were vacated.

**Background**

The D.C. Circuit determined that this Court would be "best positioned" to conduct proceedings to determine the appropriate remedy. *Nat'l Parks Conserv. Ass'n v. Semonite*, 925 F.3d 500, 502 (D.C. Cir. 2019). This Court developed an ample record on which to make that determination. The parties and *amici* submitted nearly 300 pages of briefing, in addition to substantial evidence. The Court heard argument, and thereafter entered an order directing Plaintiffs to answer a specific question about whether, if vacatur were ordered, they would expect to initiate proceedings to seek removal of the towers before the EIS process was complete. Minute Entry (Oct. 15, 2019), ECF No. 143 (order).

All parties understood why the Court was asking the question—the potential for collateral litigation was one of the disruptive consequences of vacatur. In response, NPCA advised the Court that it was preserving its right to initiate proceedings seeking removal of the towers. ECF No. 144 at 2 ("NPCA cannot forfeit its right to seek appropriate relief…."). It said it had "no concrete plans *at this time* to seek removal of the project prior to completion of the EIS based on the information currently available to it." *Id.* at 1 (emphasis added). Yet, NPCA provided five examples of additional information that would lead it to pursue "additional remedies." *Id.* at 2. The first was "whether the Corps will take any enforcement action against Dominion for maintaining a structure in the James River without a lawful permit," *id.,* clearly implying that if the Corps did not initiate collateral litigation, NPCA would.

Relying on the substantial record that had been compiled, the Court granted Defendants' motions for remand without vacatur. It first rejected Plaintiffs' arguments that waiver, forfeiture, or judicial estoppel precluded remand without vacatur. ECF No. 147 at 2-9. NPCA does not seek reconsideration of this aspect of the Court's ruling.

Turning to *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, 988 F.2d 146 (D.C. Cir. 1993), the Court found that "the severe consequences of vacating the permit" warranted remand without vacatur. *Id.* at 10. "In addition to the risk that hundreds of thousands of people will be left with an unreliable power source if the permit is vacated, there is also a risk of massive waste." *Id.* at 17. The Court expressly rejected NPCA's assertion that the threats to electric reliability are speculative. *Id.* at 13-14 ("inability to operate the towers is not a purely 'hypothetical' or 'theoretical[]' result of vacatur. It is instead the *likely effect* of vacatur.") (emphasis added, internal citation to NPCA Sur-Reply omitted).

On December 3, 2019, NPCA filed a motion for reconsideration of the Court's remand order. ECF No. 150. NPCA complains that the Court misinterpreted its position about additional remedies that NPCA might seek after vacatur. NPCA blames this on "unintended ambiguity" in NPCA's response to the Court's question about "NPCA's intentions regarding additional remedies." *Id.* at 13. NPCA purports to clarify its prior response, and it argues that the Court should now reverse its decision to remand without vacatur based on that "clarification."[1]

**Argument**

A.  Standard of Review

   1.  *Fed. R. Civ. P. 54(b) Provides the Legal Standard For NPCA's Motion*

---

[1] NPCA also now claims that it "does not believe that this remedial proceeding has involved the question of whether the project should be removed." ECF No. 150 at 6 n.2. That is not what counsel for NPCA told the media during the remedy phase. *See* ECF No. 133-1 ("'[A]s part of that vacatur order, [the Court] has the authority and discretion to order removal of the towers.' But [NPCA's counsel] added that if the judge does not want to order a complete dismantling at this stage in the litigation, the group will consider requesting injunctive relief later.") (media report quoting counsel for NPCA).

4

As an initial matter, NPCA incorrectly relies on Federal Rule 59(e) as authority for its motion for reconsideration. *See* ECF No. 150. The proper authority is Federal Rule 54(b). In *Cook Inlet Tribal Council v. Mandregan*, Judge Sullivan confirmed that Rule 54(b) governs motions for reconsideration of a remand order in an agency review case. No. 14-1835 (EGS), 2019 WL 3816573 (D.D.C. Aug 14, 2019). Rule 59(e) applies only to final judgments, and it is "black letter law that a district court's remand order is not normally 'final' for purposes of appeal under 28 U.S.C. § 1291." *Id.* at *5 (quoting *N.C. Fisheries Ass'n v. Gutierrez*, 550 F.3d 16, 19 (D.C. Cir. 2008)).

Under Rule 54(b), the proper standard for determining whether to grant a motion for reconsideration is "as justice requires." *Id.* at *4 (citing *Judicial Watch v. Dep't of Army*, 466 F. Supp. 2d 112, 123 (D.D.C. 2006)). Under this standard, "there must be some 'good reason' to reconsider an issue already litigated by the parties and decided by the court, such as new information, a misunderstanding, or a clear error." *Montgomery v. IRS*, 356 F. Supp. 3d 74, 79 (D.D.C. 2019).

2. *It is Improper in a Motion for Reconsideration to Re-Litigate, Reargue, or Reverse Prior Positions*

Regardless of the procedural basis for a motion for reconsideration, "it is well-established that 'motions for reconsideration'… cannot be used as 'an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier.'" *Estate of Gaither ex rel. Gaither v. Dist. of Columbia*, 771 F. Supp. 2d 5, 10 & n.4 (D.D.C. 2011) (denying reconsideration under Rule 54(b)) (internal citation omitted); *see also Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 226-27 (D.C. Cir. 2011) (affirming denial of reconsideration under Rule 54(b),

5

where movant "raised no arguments for reconsideration the [district] court had not already rejected on the merits….").

Further, a party cannot use a motion for reconsideration to reverse an earlier litigation position. *Dorocon, Inc. v. Burke*, No. 02-2556 (CKK), 2005 WL 3454338, at *16 (D.D.C. Dec. 16, 2005) ("Accordingly, at this late stage of the litigation, Plaintiff cannot now reverse its long-held position vis-á-vis oral terms; even if Plaintiff could, it would be judicially estopped from doing so pursuant to the Court's previous findings."); *see also Foster v. Sedgwick Claims Mgmt. Servs., Inc.*, 159 F. Supp. 3d 11, 13-14 (D.D.C. 2015) (party precluded from raising "contradictory litigation position" in motion for reconsideration because such position was previously available and not raised).[2]

B.  There is No Basis to Revisit the Court's Remand Decision

    1.  *NPCA Improperly Seeks Reconsideration Based on a New Litigation Position*

Throughout the remedy proceedings, NPCA took a consistent and unwavering position—it reserved the right after vacatur to initiate legal proceedings seeking removal of the towers. ECF No. 147 at 12 ("In their Sur-Reply, Plaintiffs all but announce their intention to initiate proceedings to have the project removed if their request for vacatur is granted."). NPCA even identified the circumstances in which it would do so. *See, e.g.,* ECF No. 144 (laying out five specific scenarios, one of which is "whether the Corps will take any enforcement action against Dominion for maintaining a structure in the James River without a lawful permit since the D.C. Circuit's ruling on March 1, 2019"). Now, NPCA seeks to reverse that position and assure the

---

[2] While *Dorocon* and *Foster* were decided under Rule 59(b), *Estate of Gaither*, *supra*, makes clear that the same basic considerations apply under Rule 54(b). *See also Nat'l Security Counselors v. CIA*, 206 F. Supp. 3d 241, 262 (D.D.C. 2016) (same).

6

Court that it does not plan currently to pursue removal before completion of the EIS. This convenient change of heart is no basis for reconsideration.

During the remedy proceedings, NPCA maintained its view that vacatur *should* lead to removal of the towers. *See, e.g.,* ECF No. 130 at 36 (NPCA "disagrees" with view that vacatur would not result in removal); ECF No. 136-2 at 17 n.6 ("legally and morally responsible position" is to "dismantle this illegal project"). NPCA has consistently maintained that the Corps is *required* to take enforcement action against the project. ECF No.130 at 36-37 (Corps has "duty… to commence an enforcement proceeding" based on "prohibition on structures in navigable waters in the absence of a legally compliant permit."); ECF No. 136-2 at 16 n.5 ("Although vacatur will not *necessarily* require project removal, it will have the immense practical value of placing the onus on the Corps to grapple with the future status of this illegally constructed project …[and] force the Corps to undertake the duties imposed on the agency in precisely this situation.") (emphasis added).

As the Court noted in its decision , NPCA had all but declared that it would initiate proceedings if the Corps did not take enforcement action. ECF No. 147 at 13 (citing NPCA Response, ECF No. 144 at 1-2). Thus, while NPCA repeatedly has claimed that "it has no concrete plans at this time" to seek project removal, it has always expressly reserved the right to do so, and suggested it might act on such right under certain circumstances. *See, e.g.,* ECF No. 144 at 2 ("NPCA cannot forfeit its right to seek appropriate relief in the event that new information or circumstances warrant further remedies"); ECF No 136-2 at 17 n.6 (although NPCA does not seek tower removal "in *this* proceeding," it is "reserving the right to seek further relief as appropriate" after the default remedy of permit vacatur) (emphasis in original).

7

NPCA's litigation position was entirely consistent with its publicly stated goals. Outside this Court, counsel for NPCA was *unequivocal*: "Our end goal is absolutely still to have these towers down before the EIS process unfolds." ECF No. 133-1 (press report quoting counsel for NPCA after NPCA filed its opposition to Defendants' motions for remand without vacatur).

Unhappy with the Court's remand order, NPCA now tries a different tack. The motion for reconsideration claims that its prior statements during the remedy proceedings do "not accurately reflect NPCA's *current* position." ECF No. 150 at 5 n.1 (emphasis added). Reversing litigation positions after the Court has ruled, however, is not a valid basis for granting reconsideration. *Dorocon, Inc.*, 2005 WL 3454338, at *16; *supra*, n.2.

2. *Reconsideration is Not Warranted Even if the Court Were to Accept NPCA's New Litigation Position*

At this late stage of the case, the Court should not allow NPCA to change its litigation position. Nevertheless, even accepting NPCA's latest statement of its position would not provide a sufficient basis for the Court to reconsider its remand order. Even when attempting to "clarify" its position, NPCA continues to hedge, stating that it "does not *expect* to seek removal of the project pending completion of the EIS based on the information *currently* available to it," and that its "principal" focus is "actively participating in the EIS process" rather than "seeking injunctive relief." ECF No. 150 at 7 (emphasis added, internal quotations omitted). These carefully crafted statements continue to leave open the possibility that NPCA would seek injunctive relief prior to completion of the EIS, as its "expectations" may change again and seeking injunctive relief could become a supplemental "focus" of its efforts. This same type of hedging the Court saw through previously.

Moreover, the Court did not rely solely on the likelihood that NPCA would initiate legal proceedings to remove the towers. The Court found that, irrespective of Plaintiffs' intentions,

8

the absence of the required permit for the project *by itself* would pose a real threat to continued operation of the transmission line. ECF No. 147 at 13-14. The Court found that permit vacatur would immediately render the project in violation of the law. *Id.* Action to enforce the law could be initiated by the Corps or third parties. Consequently, Dominion's "inability to operate the towers is not a purely 'hypothetical' or 'theoretical[]' result of vacatur. It is instead the *likely* effect of vacatur." *Id.* (emphasis added, internal citation to NPCA Sur-Reply omitted).[3] Nowhere does NPCA's motion for reconsideration address this alternative basis for concluding that vacatur would lead to disruptive consequences and jeopardize electric reliability in North Hampton Roads. Thus, even if NPCA were offering an unequivocal commitment to refrain from action seeking removal of the towers prior to the completion of the EIS, that commitment alone would not be sufficient to justify reconsideration of the Court's remand order.

    3.    *NPCA May Not Use a Motion for Reconsideration to Reargue that Vacatur is Required to Protect the Integrity of the EIS Process*

The motion for reconsideration argues that remand without vacatur will not protect the purpose and integrity of the Corps' EIS process. This argument has already been fully presented to the Court. In each of its remedy briefs, NPCA argued this very point at length. *See, e.g.,* ECF No. 130 at 23-27, 31-34 (NPCA Opposition); ECF No. 136-2 at 10-16 (NPCA Sur-Reply).[4] After acknowledging that the Corps' error was significant, the Court rejected Plaintiffs' argument that vacatur was necessary here. ECF No. 147 at 11 ("All of this is to say that the

---

[3] NPCA argues that the Corps was required to consider enforcement action as soon as the D.C. Circuit ruled in Plaintiffs' favor. ECF No. 150 at 8 n.4. NPCA is mistaken. As long as the permit remains in effect, the towers have federal authorization to be present in the James River navigation channel. As the Court properly found, vacatur would remove that authorization and put the project—and regional electric reliability—in legal jeopardy.

[4] In the companion *National Trust* case (No. 1:17-1574-RCL), Plaintiffs likewise argued that vacatur is necessary to protect the EIS process. ECF No. 110 at 29-32 (Opposition); ECF No. 114-1 at 18-20 (Sur-Reply).

seriousness of the defect is significant.  If the first *Allied-Signal* factor were the only consideration, the standard remedy would likely apply.  The second *Allied-Signal* factor, however, is critical to the ultimate determination that vacatur is not appropriate in this instance.").  It is improper to use a motion for reconsideration to reargue an issue that has been fully litigated.  *Capitol Sprinkler Inspection, Inc.*, 630 F.3d at 226-27.

In addition, NPCA still cannot explain how vacatur would cause the Corps to conduct the EIS process any differently.  NPCA's objections are focused on the existence of the towers, not keeping the permit in place.  *See* ECF No. 150 at 9 (discussing Corps' analyses of baseline impacts and no-action alternative).  Vacatur would not dictate the type or scope of analysis that the Corps is undertaking for the EIS; instead, NEPA's requirements will guide the Corps.

## Conclusion

NPCA has offered no valid reason to reconsider the Court's remand order.  In issuing that order, this Court fully grasped NPCA's position and motives.  NPCA chose to forgo seeking tower removal at the remedy stage "to minimize the appearance of harm under *Allied-Signal*'s second factor by asking only for vacatur at this stage, thus setting the scene to ask for project removal in some other forum in the future—in which case the permit will already have been vacated and project removal will be that much easier to achieve."  ECF No. 147 at 13.  NPCA renews this gambit in seeking reconsideration of the remand order.  Its motion should be denied.

Dated: December 17, 2019

Respectfully Submitted,

/s/  Harry M. Johnson, III

Harry M. Johnson, III (Bar No. IL0002)
Timothy L. McHugh   (Bar No. VA064)
HUNTON ANDREWS KURTH LLP
951 East Byrd Street

10

Richmond, VA 23219-4074
(804) 788-8784
(804) 343-4538 (fax)
pjohnson@huntonAK.com
tmchugh@huntonAK.com

Eric J. Murdock (Bar No. 443194)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue N.W.
Washington, DC 20037-1701
(202) 955-1576
(202) 857-3885 (fax)
emurdock@huntonAK.com

11