# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION,   )<br>)<br>Plaintiff,   )<br>)<br>v.   )<br>)<br>TODD T. SEMONITE, *Lieutenant General, U.S. Army Corps of Engineers et al.*   )<br>)<br>Defendants,   )<br>)<br>VIRGINIA ELECTRIC & POWER COMPANY   )<br>)<br>Defendant-Intervenor.   )<br>_____)  | Civil Action No.  1:17-cv-01361-RCL |

## FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff, the National Parks Conservation Association ("NPCA"), moved for this Court to reconsider its November 8, 2019 decision granting Federal Defendants' and Defendant-Intervenor's motions to remand the United States Army Corps of Engineers ("Corps") Clean Water Act ("CWA") Section 404 and Rivers & Harbors Act Section 10 permit without vacatur. ECF No. 126, November 8, 2019 Memorandum Opinion ("Mem. Op."); ECF No. 150, December 3, 2019 Plaintiff's Motion for Reconsideration ("Pl.'s Motion"), at 1.  Plaintiff's Motion is founded on its attempt to restate its position on seeking removal of the Project.  But that restatement is nothing more than a rehash of the same equivocal and vague statement Plaintiff previously submitted to the Court, and in any event, comes too late as there is no legal basis for Plaintiff to submit an updated position after the Court issued its final remedy order.

1

Attachment A

There was no misapprehension or mistake by the Court. Plaintiff's Motion makes clear that it is attempting to leave the door open to further relief in the form of removal of the Project. Pl.'s Motion 1, 3. Plaintiff sought the relief it deemed appropriate (*i.e.*, remand with vacatur but without Project removal) at the final remedy phase of this case and should not be afforded an opportunity to seek something different later. It is simply inappropriate and inconsistent with judicial process for Plaintiff to create an avenue to piecemeal its requested relief. And it is of no moment that Plaintiff now states that it "does *not expect* to seek removal of the project pending completion of the Environmental Impact Statement." Pl.'s Motion 1 (emphasis added). Once the Corps' Environmental Impact Statement ("EIS") is complete and a new final decision is issued, Plaintiff can seek to challenge that decision like any member of the public. That decision will be based on its own administrative record and subject to challenge as appropriate under the Administrative Procedure Act ("APA"). It is simply inappropriate for Plaintiff to attempt to leave this case open for further relief after the final remedy stage has been completed. Nothing forecloses Plaintiff from seeking to challenge any future Corps' decision, and thus, Plaintiff is not subject to any prejudice should the Court not vacate the permit.

Plaintiff's Motion should also be dismissed because it cannot satisfy the controlling standard for relief from an order under Fed. R. Civ. P. 60(b), which allows a court to "relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect . . . or for newly discovered evidence." *Id*. More specifically, Plaintiff cannot meet that burden because it simply reiterates its former position and thus there is no "misapprehension to correct" or new evidence. Pl.'s Motion 2. Furthermore, Plaintiff is without relief under Rule 60(b)(1) because the rule does not allow relief based upon a party's disagreement with a district court's legal reasoning, which is what Plaintiff requests.

Attachment A

The Court did not predicate its ruling upon Plaintiff's statement that it did not "plan" to seek tower removal, and considered multiple potential disruptive consequences stemming from the vacatur of the permit, outside of Plaintiff's anticipated involvement.

Plaintiff is also mistaken to the extent it relies upon Fed. R. Civ. P. 59(e), which governs motions to alter or amend a judgment. The decision that Plaintiff challenges is an order, not a judgement. Moreover, even if Rule 59(e) were applicable (which it is not), Plaintiffs also could not meet that standard for the same reasons they cannot prevail under Rule 60(b).

Finally, Plaintiff is incorrect that the Court was obligated to address what NPCA suggests was a mandate from the D.C. Circuit that the Court must determine a remedy to protect the purpose and integrity of the EIS process. Nonetheless, the Court properly considered this issue in the context of its decision to remand with vacatur. For these reasons, the Court should dismiss Plaintiff's Motion.

## II. BACKGROUND

Plaintiff and the National Trust for Historic Preservation each pursued injunctive relief in August 2017, challenging the Corps' 2017 issuance of a CWA Section 404 and Rivers & Harbors Act Section permit to Virginia Electric & Power Company ("Dominion" or "Defendant-Intervenor") for the construction of a transmission line crossing the James River based on alleged violations of the National Environmental Policy Act ("NEPA"), the National Historic Preservation Act ("NHPA"), and the CWA. This Court denied both motions. *Nat'l Parks Conserv. Ass'n v. Semonite*, 282 F. Supp. 3d 284 (D.D.C. 2017). Federal Defendants lodged an administrative record and each party filed cross-motions for summary judgment. *See* Notice of Filing Administrative R., *Nat'l Parks Conserv. Ass'n v. Semonite,* No. 17-1361 (D.D.C. Nov. 6, 2017), Dkt. No. 65; Fed. Defs.' Cross-Mot. for Summ. J., Dkt. No. 78; Fed. Defs.' Reply in

Supp. of Cross-Mot. for Summ. J., Dkt. No. 88.[1]  This Court granted Federal Defendants' and Defendant-Intervenor's cross-motions for summary judgment on all claims.  *Nat'l Parks Conserv. Ass'n v. Semonite (Nat'l Parks Conserv. Ass'n I)*, 311 F. Supp. 3d 350 (D.D.C. 2018), *rev'd and remanded,* 916 F.3d 1075 (D.C. Cir. 2019) *and rev'd and remanded* per curiam, 925 F.3d 500 (D.C. Cir. 2019).  Plaintiffs then moved for an injunction pending appeal, which this Court denied.  *Nat'l Parks Conserv. Ass'n v. Semonite (Nat'l Parks Conservation Ass'n II)*, No. 17-1361-RCL, 2018 WL 3838809 (D.D.C. July 3, 2018); *see* Fed. Defs.' Opp'n to Pl.'s Mot. for Inj. Pending Appeal, Dkt No. 115 (Federal Defendants' Opposition).

Plaintiffs appealed, alleging that the Corps violated NEPA in its evaluation of impacts and alternatives and violated the NHPA.  The D.C. Circuit found in favor of Plaintiffs, vacated the Corps' decision and the permit, and ordered the Corps to prepare an EIS.  *Nat'l Parks Conserv. Ass'n v. Semonite (Nat'l Parks Conservation Ass'n III)*, 916 F.3d 1075 (D.C. Cir.); *amended on reh'g in part,* 925 F.3d 500 (D.C. Cir. 2019) (per curiam); Final Answering Br. for the Fed. Appellees, *Nat'l Parks Conservation Ass'n v. Semonite,* No. 18-5179, Dkt No. 1757784. Federal Defendants and Defendant-Intervenor sought panel re-hearing solely on the issue of remedy, and Defendant-Intervenor sought rehearing en banc.  Dkt. No. 1782986.  On May 31, 2019, the D.C. Circuit denied rehearing en banc, and issued a decision and amended judgment on rehearing, remanding the questions of judicial estoppel and remand without vacatur to this Court. *Nat'l Parks Conserv. Ass'n v. Semonite (Nat'l Parks Conservation Ass'n IV)*, 925 F.3d 500 (D.C. Cir. 2019) (per curiam).  In its decision, the D.C. Circuit mandated that the district court consider "whether vacatur is the appropriate remedy."  *Nat'l Parks Conserv. Ass'n v. Semonite*, Doc. No.

---

[1] Federal Defendants submitted identical briefs in both of the above-captioned cases because the cases were litigated together despite not being consolidated.  For brevity, Federal Defendants cite to the filings in Case No. 17-1361 (D.D.C.).

Attachment A

1790341, Case No. 18-5179 (May 31, 2019). Following the mandate, Federal Defendants and Defendant-Intervenor each filed a motion for the Court to remand the permit without vacatur. After briefing and argument on the remedy motions, the Court requested that Plaintiffs each provide an answer to the following question—"[i]f the Court should decide to vacate the permit, do plaintiffs expect to initiate further proceedings (prior to the completion of the Environmental Impact [Statement]) before an agency, administrative law judge, this Court, or any other juridical body requesting removal of the Surry-Skiffes Creek-Whealton project?" ECF No. 121, at 2. In response, Plaintiff stated that "it has no concrete plans at this time to seek removal of the project prior to completion of the EIS based on the information currently available to it." ECF No. 144, at 1. As easily recognized, Plaintiff's language was intentionally equivocal. Indeed, despite being at the final remedy phase of this litigation, Plaintiff attempted to leave the door open for it at any time under undefined circumstances to seek removal of the Project in the event of vacatur. Ultimately, the Court remanded without vacatur on November 8, 2019, based upon its analysis and application of *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146 (1993). *See* Mem. Op. On December 3, 2019, Plaintiff filed a Motion for Reconsideration.

## III. ARGUMENT

Plaintiff has not demonstrated that there is new information for the Court to consider, nor is there misapprehension of fact to correct, and thus, the Court should reject Plaintiff's motion.

### A. Plaintiff is without relief under Fed. R. Civ. P. 59(e).

Plaintiff predicates its Motion upon Fed. R. Civ. P. 59(e), which provides that "a motion to alter or amend judgment must be filed no later than 28 days after the entry of the judgment." *Id*. However, the more applicable rule is Fed. R. Civ. P. 60(b), which allows relief from a final judgment, order, or proceeding, and states:

Attachment A

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

*Id.* The Court did not enter judgment here, and therefore, the more applicable standard is Rule 60(b). Nonetheless, Plaintiff cannot meet the burden of either Rule 59(e) or 60(b).

Courts do not grant motions for reconsideration made under Rule 59(e) unless there is an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Uberoi v. E.E.O.C.*, 271 F. Supp .2d 1, 2 (D.D.C 2002) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C.Cir.1996) (per curiam)). This type of motion is "not simply an opportunity to reargue facts and theories upon which a court has already ruled." *Id* (citing *New York v. U.S.*, 880 F. Supp. 37, 38 (D.D.C. 1995)). Furthermore, a 59(e) motion is not "a vehicle for presenting theories or arguments that could have been advanced earlier." *Id.* (citing *W.C. & A.N. Miller Companies v. United States*, 173 F.R.D. 1, 3 (D.D.C. 1997)). In its Motion, Plaintiff suggests that reconsideration is warranted under Fed. R. Civ. P. 59(e) to correct a "serious misapprehension of fact." Pl.'s Motion 2. "To constitute 'clear error' within the meaning of Rule 59(e), courts have required 'a very exacting standard, such that the 'final judgment must be dead wrong' to constitute clear error.'" *Slate v. American Broadcasting Companies, Inc.*, 12 F. Supp. 3d 30, 35 (D.D.C. 2013) (quoting *Bond v. U.S. Dep't of Justice*, 286 F.R.D 16, 22 (D.D.C. 2012); *Lardner v. FBI*, 875 F. Supp. 2d 49, 53 (D.D.C. 2012)). "Mere disagreement does not support a Rule 59(e) motion." *Slate*, 12 F. Supp. 3d at 35 (quoting *United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290

6

(4th Cir. 1993)). Plaintiff has not met the requisite burden of Rule 59(e) because it has not demonstrated that the district court's finding is erroneous. Instead, Plaintiff professes to submit a new statement to the Court, that "it does not expect to seek removal of the project pending completion of the Environmental Impact Statement." Pl.'s Motion 1. This statement's present expectation is not an unequivocal commitment regarding future attempts to seek removal. This statement offers nothing more than Plaintiff previously submitted to the Court. Moreover, there is no error to correct because the Court did not premise its holding entirely upon Plaintiff's position. *See infra* III.B. Instead, the Court thoughtfully analyzed the relevant factors under *Allied-Signal* to determine that disruptive consequences would result from the Court's vacatur. *See id.*

> **B.  Plaintiff is without relief under the more applicable standard, Fed. R. Civ. P. 60(b).**

With respect to the application of Rule 60(b), "mistake" and "availability of new evidence" are the most analogous bases to that which Plaintiff alleges as a basis for reconsideration under Rule 59(e). *See* Pl.'s Motion 2 (alleging "misapprehension of fact"). There too, Plaintiff cannot make the requisite showing.[2] Under Rule 60(b), "[s]tanding alone, a party's disagreement with a district court's legal reasoning or analysis is rarely, if ever, a basis for relief under Rule 60(b)(1). *Munoz v. Bd. of Trustees of Univ. of Dist. of Columbia*, 730 F. Supp. 2d 62, 67 (D.D.C. 2010). Although "the D.C. Circuit has declined to decide whether errors in legal reasoning may be corrected by Rule 60(b)(1) motions, the case law suggests that

---

[2] Rule 60(b)(6) is also unavailing. The Supreme Court has recognized that Rule 60(b)(6) motions should be granted in "extraordinary circumstances." *Ackermann v. U.S.*, 340 U.S. 193, 199 (1950). Further, Rule 60(b)(6) "should be only sparingly used" and may not "be employed simply to rescue a litigant from strategic choices that later turn out to be improvident." *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Circ. 2007).

7

Attachment A

the rule applies only when the district court has committed an 'obvious error,' such as basing its legal reasoning on case law that it failed to realize had recently been overturned or in the very limited situation when the controlling law of the circuit changed between the time of the court's judgment and the Rule 60 motion." *Id.* at 67 (quoting *Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 903 (D.C. Cir. 1996); *Bestor v. F.B.I.*, 539 F. Supp. 2d 324, 328 (D.D.C. 2008)). Other circuits have taken the position that a litigant may not seek reconsideration for a court's alleged error in legal reasoning. *See Elias v. Ford Motor Co.,* 734 F.2d 463, 467 (1st Cir.1984) (recognizing that a party may not use Rule 60(b)(1) to assert that the district court made an error of legal reasoning); *Smith v. Evans,* 853 F.2d 155, 158 (3d Cir.1988) (same); *McKnight v. U.S. Steel Corp.,* 726 F.2d 333 (7th Cir.1984) (same); *Spinar v. S.D. Bd. of Regents,* 796 F.2d 1060, 1062 (8th Cir.1986) (same).

      i.      **Plaintiff offers no new information for the Court's consideration and there is no mistake in the Court's decision.**

As was noted previously, Plaintiff claims to offer a clarification, but instead simply restates its former position. *Compare* ECF No. 144 at 1 (stating that "it has no concrete plans at this time to seek removal of the project prior to completion of the EIS based on the information currently available to it."). It is Plaintiff's burden at this remedy stage of the litigation to indicate its anticipated action, but Plaintiff has not equivocally stated its intentions and continues to act purposefully vague in its submissions to the court in order to preserve potential future challenges. Plaintiff states that its reason for the lack of particularity, is that there are allegedly "too many unknowns." *See* Pl.'s Motion 3-4 (stating that "NPCA provided a non-exhaustive list of information that is uniquely in the Corps' control (and thus unknown to NPCA) to explain why NPCA cannot forfeit its right to seek further relief should, for example, the timeline for EIS completion dramatically change."). Plaintiff, however, misconstrues the law and ignores the

8

proper avenues to address these concerns. Once the EIS is complete, the Corps will issue a new final agency action that will be supported by its own administrative record. Plaintiff can challenge that decision and seek whatever remedy it chooses, consistent with the APA. If Plaintiff is concerned that the EIS process is taking too long (a purely speculative notice with no basis for support), Plaintiff could also endeavor to see relief under the APA for the perceived failure to act. *See* 25 U.S.C. § 706(1) (agency's failure to act).

Plaintiff's allegation that the Court misapprehended a "material fact" is a product of its own deliberate ambiguity. The ambiguity here is factually distinct from the misapprehended material fact cited by Plaintiff in *Breen v. Chao*, 2018 WL 1509077, at *4 (D.D.C. 2018) or the change in law in *Lance v. UMW 1974 Pension Trust*, 400 F. Supp. 2d 29 (D.D.C. 2005).[3] In other words, Plaintiff is trying to create a new category that would cover misapprehension of a party's legal strategy. Even if this could be considered a "material fact," Plaintiffs attempt to clarify its intentionally ambiguous response to the Court's question does not cure the ambiguity. If anything, it reinforces the ambiguity by adding the word "expect" to its statement and outlining other circumstances in which Plaintiff may seek relief during the EIS process. Plaintiff's disagreement with the Court's ultimate decision does not constitute Plaintiff's alleged

---

[3] To complicate matters further, NPCA cites cases utilizing an inapplicable standard regarding judgment, Fed. R. Civ. P. 54(b). Rule 54(b) is inapplicable because Plaintiff has not made a motion for the Court to render final judgment to fewer than all claims. In *Breen v. Chao*, cited by Plaintiff, the court was ruling on a motion for reconsideration for an interlocutory order under Rule 54(b) where the court "has more flexibility in applying Rule 54(b) than in determining whether reconsideration is appropriate under Rules 59(e) and 60(b)." 2018 WL 1509077, at *4 (D.D.C. 2018) (internal quotations omitted) (quoting *Wannall v. Honeywell Int'l, Inc.*, 292 F.R.D. 26, 30, 32 (D.D.C. 2013), *aff'd sub nom. Wannall v. Honeywell, Inc.*, 775 F.3d 425 (D.C. Cir. 2014)). Similarly, Plaintiff relies upon *Stewart v. F.C.C* where the court did not even mention the 59(e) standard and instead went straight to the "as justice required standard." 189 F.Supp.3d 170, 173 (D.D.C. 2016).

standard of "clear error," "mistake," or newly discovered evidence under the relevant standard of Rule 60(b), and thus, the Court should deny Plaintiff's Motion.

### ii. The Court's decision is not predicated exclusively upon Plaintiff's submission.

Plaintiff is also incorrect in suggesting that the Court predicated its decision entirely upon Plaintiff's statement. Pl.s' Motion 4 (stating that "[i]n reaching the conclusions that the Court's vacatur of the permit was "certain" to result in removal of the project and cause disruptive consequences, the Court relied on its characterization of NPCA's position . . .") and 7 (stating that "[f]irst the Court's ruling (and its grant of remand without vacatur) is predicated on a misapprehension of fact concerning the likelihood that NPCA will seek injunctive relief to remove the project . . . ."). Contrary to Plaintiff's articulation of the Court's decision, the Court did not predicate its decision *entirely* upon Plaintiff's statement. The Court noted:

> Furthermore, even if plaintiffs did not initiate proceedings to have the towers removed following a vacatur order, defendants would be in violation of the law by continuing to operate the project without permit. Therefore, inability to operate the towers is not a purely "hypothetical" or "theoretica[l]" result of vacatur. It is instead the likely effect of vacatur. At the very moment that the Court would order vacatur, the project would be in direct violation of the law requiring a permit.

Mem. Op. 13. The Court then continued to analyze the various real-world consequences stemming from vacatur under the second prong of *Allied-Signal*. Plaintiff is incorrect that the Court predicated its finding entirely upon Plaintiff's stated position. Quite the opposite occurred. The Court stated that "even if plaintiffs did not initiate proceedings . . . defendants would be in violation of the law by continuing to operate the project without the permit." *Id*. The Court was clear in that it did not predicate its decision entirely upon NPCA's statement, but instead found that if it ordered vacatur, the operation of the transmission line would be in violation of the law requiring a permit, and that violation would cause severe disruptive consequences going forward.

10

Attachment A

*Id.* As Federal Defendants noted in their Petition for Rehearing and in their opening remedy motion, vacating the permit with respect to the CWA would have no practical consequence, while vacating with respect to the Rivers and Harbors Act would place the James River crossing in violation of Section 10 of that statute, 33 U.S.C. § 403. Dkt No. 1782986, at 11-12 (Petition for Rehearing); ECF No. 129, Federal Defendants' Motion ("Fed. Defs' Mot."), at 14-15. The Court recognized that vacating the permit would place the Project in violation of the law. Disruptive consequences would result from vacatur, as Federal Defendants explained at the October 15, 2019 hearing. More specifically, the permit terms, which include provisions for lighting of the towers, will no longer be in effect, and thus will create safety and navigation disruption. Specific project conditions that require Dominion to properly light large towers in the James River for visibility purposes will no longer be valid. Should the permit be vacated, these terms are no longer enforceable, creating significant navigation and safety disruption.

Finally, Plaintiff suggests that the Court ignored a mandate from the D.C. Circuit to ensure the integrity of the EIS process. NPCA misconstrues the nature of the D.C. Circuit's mandate. The mandate provides: "the District Court with instructions to direct the Corps to prepare an environmental impact statement and for further proceedings to consider whether vacatur is the appropriate remedy, in accordance with the opinions of the court filed March 1, 2019 and May 31, 2019." *Nt'l Parks Conserv. Ass'n v. Semonite*, Doc. No. 1790341, Case No. 18-5179 (May 31, 2019). The Court gave due consideration to Plaintiff's argument that vacatur was necessary to ensure the integrity of the EIS process. The Corps has already initiated the EIS process, including the solicitation of public comments. Fed. Defs' Mot. 11. There is no basis to question the EIS process; the Corps has publicly set forth how that process is proceeding, consistent with NEPA. Furthermore, after briefing and oral argument, the Court dedicated over

11

Attachment A

half of its opinion to considering the appropriate remedy and found that the proper remedy is remand without vacatur. *See* Mem. Op. 10-18. NPCA's disagreement with the Court's decision that remand without vacatur is appropriate given the serious disruption that would result does not support reconsideration.

## IV. CONCLUSION

Plaintiff has attempted to re-litigate the issues that have been pending before the Court for months. There is nothing in Plaintiff's statement that gives the Court any more assurances of how Plaintiff intends to proceed while the Corps completes the EIS process, though it is Plaintiff's burden at this stage of the litigation to unequivocally state its intentions. At any rate, Plaintiff has not met the requisite burden under Rule 59(e) or 60(b) to justify the Court's reconsideration of its order to remand without vacatur because there is no misapprehension of fact, newly discovered evidence, or mistake to correct, and Plaintiff's mere disagreement with the Court's holding to remand without vacatur does not suffice. The Court adequately considered the potential disruptive consequences should vacatur occur and did not premise its findings entirely upon Plaintiff's position. Instead, the Court carefully analyzed the seriously disruptive consequences from vacatur, including the risk that people will be left with an unreliable power source, massive waste, and impacts from tearing down the Project. Mem. Op. 13-18. The Court should deny Plaintiff's Motion.

Dated: December 18, 2019
                              JEAN WILLIAMS
                              DEPUTY ASSISTANT ATTORNEY GENERAL
                              United States Department of Justice
                              Environment & Natural Resources Division

                              */s/ Dedra S. Curteman*
                              DEDRA S. CURTEMAN, IL Bar No. 6279766
                              TRIAL ATTORNEY
                              Natural Resources Section

P.O. Box 7611
Washington, D.C. 20044
Tel.: 202.305.0446
Fax: 202.305.0506
Dedra.Curteman@usdoj.gov

*/s/ Heather E. Gange*
HEATHER E. GANGE, D.C. Bar No. 452615
Sr. TRIAL ATTORNEY
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
Tel.: 202.514.4206
Fax: 202.514.8865
Heather.Gange@usdoj.gov

Case 1:17-cv-01574-RCL Document 135 Filed 12/20/19 Page 13 of 13

Attachment A